THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EUGENE DUNBAR, Defendant-Appellant.

(No. 70-235;

Second District—July 29, 1971.

Morton Zwick, Director of Defender Project, of Chicago, and E. Roger Horsky, of Defender Project, of Elgin, for appellant.

John B. Roe, State's Attorney, of Oregon, and William B. Scott, Attorney General, of Springfield, (Alan Cargerman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

After a trial by jury in the circuit court of Ogle County, Robert Eugene Dunbar was found guilty of the offense of indecent liberties with a child, and was sentenced to a term of six to ten years. The issues before this court are whether the defendant was denied the effective assistance of counsel and whether he was proved guilty beyond a reasonable doubt.

The complaining witnesses were two girls, Judy Cryer and Ethel Perdue, who were 11 and 12 years old, respectively, at the time of the incident and lived at the Nachusa Lutheran Home for Children. The testimony of the two girls was that they rode into Dixon, Illinois, in a school bus on September 19, 1969, but instead of going to school they skipped school that day. They were walking in Page Park, which adjoins the high school, and soon after 11:00 A.M. the defendant drove up in his car, accompanied by a John Fischer. The defendant got out of his car, told the girls they should be in school, and after showing them a badge, told them they would have to come to headquarters. He ordered them into his car, which had a police radio and two large antennae. The girls thought the defendant was a policeman. Judy got in the back seat with Fischer, while Ethel rode in front with the defendant. The defendant drove out into the country to an unmarked building, where he had the girls get out of the car. He unlocked the door to the building which was a one-room clubhouse of a motorcycle club, and they went inside the building. Thereupon the defendant told the girls he would have to search them, and he ran his hands over both of their bodies, front and back. Thereafter, he went outside the building with Fischer for a short period of time. Upon returning, the defendant ordered the girls to take off their clothes. Although they objected, they did disrobe after being ordered to do so. After the girls had disrobed, the defendant ordered Judy to sit with Fischer, while he stayed with Ethel. The testimony of the girls is that the defendant laid on top of Ethel and tried to molest her sexually. Later Judy sat on the defendant's lap and he touched her privates. After approximately one half-hour from the time of entering the building, the defendant told the girls to put their clothes on, and the four of them drove back to Page Park. Judy got out of the car, but Ethel asked her to get back into the car as they were all going for hamburgers. After going to a drive-in restaurant, they returned to Page Park. The defendant and Fischer left, and the girls, after waiting for the school bus, rode home on the bus and arrived there

about 4:15 P.M. They told a friend about the incident, and she told a Mrs. Chubb, their supervisor. The incident was reported to the police, and the girls accompanied and directed the police to the building and later identified the defendant from a lineup.

The defendant testified that he had never seen the complaining witnesses before; that he worked on his motorcycle in the morning of September 19, 1969; had lunch and thereafter sat down by the river and read until he punched in for work between 3:15 and 3:20 P.M. This alibi testimony as to what the defendant did prior to going to work that afternoon is uncorroborated.

The defendant, in his argument that he was denied the effective assistance of counsel, states that his trial counsel, a public defender, failed to object to many leading questions; failed to impeach Fischer, who was a State witness, by his grand jury testimony; and failed to request instructions regarding the accomplice testimony of Fischer and the alibi defense.

It appears that the public defender filed a pre-trial motion for psychiatric examination which was made, and the psychiatric opinion was that the defendant was able to understand the nature of the charges against him and to cooperate in his defense. The public defender also filed a pretrial motion requesting that the State's Attorney produce a list of witnesses, a copy of the minutes of the grand jury, and a copy of any alleged statements or confessions. This motion was granted. The girls apparently never made any statements to the police or State's Attorney, but the defense did secure the testimony which Fischer, the accomplice, had given before the grand jury. The public defender was faced with the situation of two young girls who described the incident to the jury clearly and without hesitation. The public defender made several objections to leading questions, but apparently as a matter of strategy conducted the defense by drawing out inconsistencies in their testimony without taking the risk of emphasizing the testimony as to the indecent liberties by numerous objections. Also, he was relying upon convincing the jury that the defendant had punched in for work at 3:23 P.M. so that he could not have been present at the time and place the crime supposedly occurred.

As to the matter of attempting to impeach Fischer's testimony by means of the grand jury transcript, the girls had already testified to the same material facts that Fischer testified to, and as previously stated, the defense was an alibi.

■ With regard to the claim that the defendant was denied the effective assistance of counsel because of the public defender's failure to tender certain instructions, the State had tendered and the court had

given the standard Illinois pattern jury instructions applicable to this type of case, including an instruction on "interest, bias or prejudice" of a witness as effecting his credibility. It appears that the public defender had essentially the same set of instructions prepared but did not tender them because they already were tendered by the State's Attorney. It cannot be said that the public defender incompetently represented the defendant because he did not tender a special accomplice instruction. Cf. *People v. Werhollick*, 101 Ill.App.2d 353, 360.

Although complaint is made that no instruction is given on the issue of alibi, in view of the factual situation that developed, it is quite possible that the public defender did not want to tender the standard instruction on the issue of alibi. It is also contended that the fact the public defender did not offer evidence to supplement the probation officer's report at the hearing on aggravation and mitigation demonstrated the incompetency of defense counsel. That report seemed to be fairly complete, and there is no indication that the public defender could have offered some facts in mitigation which he did not. In *People v. Alexander*, 45 Ill.2d 53, in deciding that incompetency of counsel was not established under the circumstances present therein, it is stated at page 56:

"In support of his argument that he was denied the effective assistance of counsel at his trial, the defendant relies upon the fact that his trial counsel failed to file any pretrial motions in his behalf, that he did not request a list of witnesses, that he was totally unprepared to confront and cross-examine the State's witnesses, that he failed to request witnesses' prior statements either in the form of police reports or grand jury testimony, and that he failed to inquire whether the arresting officers had informed the defendant of his constitutional rights. We have examined these contentions in light of the entire record in the case, and we are unable to agree that the defendant was incompetently represented."

Here the public defender presented pre-trial motions, cross-examined witnesses and did many things, the omission of which was held not to show incompetency in light of the entire record in the *Alexander* case. A review of the record herein clearly establishes that the public defender very diligently and adequately represented the defendant in view of the factual situation he was confronted with and made an impressive argument to the jury. The defendant was not denied his constitutional right to the effective assistance of counsel. (*People v. Alexander, supra; People v. Washington*, 41 Ill.2d 16, 21-22), and substantial prejudice to the defendant was not shown by the type of representation he received. *People v. Bernette*, 45 Ill.2d 227, 233-234; *People v. Morris*, 3 Ill.2d 437, 445.

We next turn to the contention that the defendant was not

proved guilty beyond a reasonable doubt. Defendant states that the testimony of the complaining witnesses is a fabrication; that there were many inconsistencies in the testimony of Judy, Ethel and Fischer as they relate to each other; that under the circumstances the girls could have escaped had they tried when they went for hamburgers; and that the girls made no outcry or complaint either at the drive-in or to the bus driver on their way home. Nevertheless, it is for the jury to determine the credibility of the witnesses, and the inconsistencies in the testimony of the various witnesses do not appear to be as to material elements of the crime. The lack of outcry as noted, or attempt to escape under the circumstances here present, are to be considered by the jury but do not require a verdict of "not guilty."

Defendant also contends that there was a lack of the required corroboration necessary in this type of case. It is well established that where conviction of the crime of indecent liberties rests upon the testimony of a child, the evidence must be corroborated or must otherwise be clear and convincing. (*People v. Ulrich*, 30 Ill.2d 94, 98; *People v. Glugla*, (Ill.App.2d), Appellate Court, 2d District, No. 70-152.) The testimony of the two girls appears to be clear and convincing, and there is also substantial corroboration of their testimony despite minor inconsistencies in their testimony and that of Fischer.

Defendant's alibi can only be substantiated after 3:23 P.M. of the day in question for that is the time when a Mr. Wilkenson, who is in charge of time cards at Henry Pratt Corporation, testified that the defendant punched in on a time card. The testimony of the other witnesses as to when they returned to Page Park for the last time is not positive and exact and, therefore, does not negate the conclusion that the incidents did happen prior to the defendant checking in for work.

The judgment of the circuit court of Ogle County is affirmed.

Judgment affirmed.

MORAN, P. J., and SEIDENFELD, J., concur.